Dole v. Allen.

## DOLE vs. ALLEN.

If the overseers of a society of friends or quakers, in a certificate granted to one of their members, under *Stat.* 1821, *ch.* 164, *sec.* 1, state that he " measurably" conforms to the usages of the society ; the certificate is good, notwithstanding that qualification.

A certificate of membership, granted by the overseers of a society of friends or quakers, pursuant to *Stat.* 1821, *ch.* 164, *sec.* 1, is conclusive evidence of the facts it contains.

In a writ of error, brought to reverse the judgment of a justice of the peace, in a military prosecution, the case was thus.

The plaintiff, who was clerk of a company of militia, having brought an action of debt, upon the statute, to recover of the defendant a fine for non-appearance at several company trainings; the defendant produced in bar of the action, a certificate from the overseers and clerk of the society of Friends or Quakers, in

*Windham*, of the following tenor ;—*Windham*, 3 mo. 28, 1826. We the subscribers, of the society of people called Quakers, in the town of *Windham*, and county of *Cumberland*, do certify that *David Allen* is a member of our society, and that he frequently and usually attends with said society for religious worship, and *measurably* conforms to the usages of the same, and we believe is conscientiously scrupulous of bearing arms." And the question was, whether this was a compliance with the act for regulating and governing the militia, *Stat.* 1821, *ch.* 164, *sec.* 1, the word " measurably" not being contained in the form prescribed in the statute.

The plaintiff offered to disprove, by witnesses, the facts set forth in the certificate ; but the justice refused to admit the proof, and rendered judgment for the defendant; upon which the plaintiff brought this writ of error.

*Fessenden*, *Deblois* and *Eveleth*, for the plaintiff in error, rested their argument upon the ground that the performance of military service was a duty of general obligation on all able-bodied citizens, of the proper age ; and that the party claiming an exemption, must bring his case strictly within the terms of the statute. This requires, in the case of a quaker, the concurrence of four particulars ;—1, that he be a member of the society ;—2, that he frequently and usually attend public worship with them;—3, that he conform to their usages ;—4, that he be conscientiously scrupulous of bearing arms. All these must be absolute, unqualified, and certain. But if the word " measurably" may be inserted to qualify any one of these, it may qualify them all; and thus a class of exempts be created which the statute never intended, and with which religion and conscience have nothing to do. *Commonwealth v. Fletcher* 12 *Mass.* 441. *Lees v. Childs* 17 *Mass.* 351. *Thurtell v. The Hundred of Mutford* 3 *East.* 400. *Worsley v. Wood* 6 *D. & E.* 720.

They further contended, that the certificate of the overseers was not conclusive evidence of the facts it contained. They are not under oath ; nor subject to a penalty for certifying falsely ; and their official acts stand on no higher ground than the books

---

Dole *v.* Allen.

---

a corporation ; which are not received as evidence in favor of its members. 1 *Stark. Ev.* 298. 12 *Mass.* 441. Of the same character is a surgeon's certificate, until approved and signed by the proper officer. *Commonwealth v. Fitz* 11 *Mass.* 542. *Commonwealth v. Smith, ib.* 456.

*Longfellow* and *Greenleaf*, on the other side, contended, that the certificate was conclusive evidence of all the facts which the law had directed those officers to certify; being in the nature of an inquest of office, by a court of competent jurisdiction. 2 *Stark. Ev.* 173. *Bull N. P.* 229. *4 Stark. Ev.* 217, *note y. ib.* 363. *Brown v. Bullen Doug.* 407.

And they insisted, that it was a substantial compliance with the law ; the object of which was to protect the conscience of those who were scrupulous of the lawfulness of bearing arms. The words " measurably" which the overseers had inserted out of abundant caution, ought to be received in its popular sense ; and meant no more than general conformity to the external discipline of the society.

WESTON J. delivered the opinion of the court at the succeeding term in *Kennebec.*

The sect to which the defendant belongs, after suffering much both in England and in this country, from the intolerant spirit of the age in which they first appeared, have long since entitled themselves to public favor, by their exemplary and inoffensive deportment. The wisdom and expediency of religious toleration although it commends itself to the reason and feelings of all, who give the subject a just consideration, was not readily adopted, nor until its utility and necessity was fully demonstrated by experience. It is now, however, generally acknowledged by the enlightened part of mankind.

It is one of the known tenets of this denomination of christians, that it is not lawful to engage in war, or bear arms, or to do any other act preparatory to a state of war. It is true, that during our revolutionary struggle, a portion of them, upon the principle of necessary self defence, did take part with their country, in

their endeavors to repel the enemy ; but this was regarded as a departure from their general principles, and however justified by the dictates of patriotism and sound morality, it was held by a majority of their brethren, to be inconsistent with the purity of their religious profession. If those, who take a more enlarged view of the relations of mankind with each other, and the danger to which, in their present moral condition, the most unoffending are exposed, are impressed with the necessity of arming in defence of their rights ; it does not accord with the temper of the times to enforce the performance of this duty upon those, who, from religions scruples, cannot do so, without violating their consciences. Such are left to contribute their proportion to the general good, by cultivating the arts of peace. Accordingly, both in Massachusetts and in this State, friends or quakers have been by law exempted from military duty. To regulate this privilege, and to secure it from abuse, the legislature has prescribed what evidence shall be required from the party to prove himself entitled to the exemption he claims. This consists in a certificate, the substance of which is specified, to be signed by two or more of the elders or overseers of the society with which the party meets for public worship ; and countersigned by the clerk. This certificate must state, in substance, that he is a member of the society ; that he frequently and usually attends with it for religious worship ; and conforms to the usage of the same ; and that they believe he is conscientiously scrupulous of bearing arms.

The certificate in question is in the form prescribed, except that it states that the party "measurably" conforms to the usage of the society ; instead of setting forth that fact simply, and without qualification. It is insisted, that this is a substantial variance from that which the statute requires. Measurably, by the best lexicographers, has the sense of moderately ; and moderately is, by the same authorities, defined to mean temperately, mildly, in a middle degree. The law intended to give this immunity to all who conscientiously belonged to this religious persuasion ; whether distinguished by their very strict and undeviating conformity to its usages ; or by that which could

deserve only the appellation of ordinary or moderate. And we are therefore of opinion that the interposition of this term, "measurably," does not substantially change the character of the certificate; even regarding it as used in its established and accurate sense. But when introduced as expressive of the degree, in which an individual conforms to his religious theory; especially by those who, as spiritual overseers, may be supposed to have in their contemplation a high and elevated standard, it ought perhaps to be considered, as indicating an opinion that the conformity of the party is mingled with the imperfection, which belongs to human nature; and that they could not, consistently with veracity, represent it as complete, unqualified and perfect. If a religious professor, of exemplary piety and great purity of life, should speak of himself or be spoken of by others, as measurably conforming to the duties of religion, we should at once perceive that the qualifying term was used in reference to that perfect standard, to which no man in this world attains; and by no means as indicating that the party might not be entitled to be placed in the highest class, as a religious and moral character.

The certificate then, in the case before us, substantially conforms to the law. We must regard it as having been seasonably produced to the commanding officer of the company; as no objection appears or is made to it, upon the ground that the fact was otherwise. This being done, the law declares the party exempt from the performance of military duty. Evidence adduced to contradict that in which the law reposes confidence was, in our opinion, properly rejected by the justice. It is not to be presumed that persons, raised to the office of elders in a religious society, even if we could suppose them capable of disregarding the ties of conscience, would so expose themselves in the eyes of their brethren and of the community, as to certify as true, what might be easily ascertained to be false. The society themselves have an interest in preventing abuses of this kind; which might occasion the loss of their privileges; or the imposition of some equivalent burden.

The opinion of the court is, that there is no error in the judgment complained of; which is therefore affirmed, with costs, for the defendant in error.